

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00101-CV
No. 07-13-00102-CV

IN THE INTEREST OF R.B., A CHILD
IN THE INTEREST OF A.B., A CHILD

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court Nos. 9115-L1, 9387-L1, Honorable Jack Graham, Presiding

August 12, 2013

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellants, Peter and Aleza, appeal the termination of their parental rights to children, R.B. and A.B.[1] Both Peter and Aleza contend that the evidence is legally and factually insufficient to support the predicate grounds for termination and the finding that termination is in the best interest of the children. We will affirm.

---

[1] Appellants will be referred to as "Peter" and "Aleza" and the children will be referred to by initials only. See TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2012); TEX. R. APP. P. 9.8(b)(2).

Factual and Procedural Background

Peter and Aleza have, at least, seven children together. Their two youngest children are the subject of this appeal. In raising their children, Peter and Aleza have had significant involvement with the Department and law enforcement. At some point, Peter and Aleza were investigated in Iowa stemming from allegations of domestic violence, alcohol use, and physical abuse against the children. There were two investigations in Dallas, in November of 2007 and October of 2008, arising from allegations of domestic violence, alcohol use, and physical abuse of the children.

In June of 2010, the Department received an intake in Amarillo that included allegations of physical abuse of the children and that Peter had sexually abused the oldest child of the house, S.B. As a result, the children were removed from the home and the Department was named temporary managing conservator of the children. Peter and Aleza began working services toward reunification with the removed children. During this time, R.B. was born. The Department allowed R.B. to stay in the home with Peter and Aleza because they were working services at that time. In July or August of 2011, four of the older children were reunified with Peter and Aleza.[2]

On or about August 25, 2011, the Department received another intake regarding Peter and Aleza. In this instance, it was alleged that Aleza, while intoxicated, had struck one of the children and had picked up R.B. by one arm. The police had been called to the scene and, based on their observations and interviews with Peter and some of the children, Aleza was arrested. As a result of the Department's investigation

_____

[2] The oldest of the removed children, S.B., was permanently placed with her maternal aunt.

of this incident, R.B. was placed with an older sibling, K.B. The Department and Peter entered into a safety plan where it was agreed that Peter would have supervised visitation with R.B. while Aleza was to have no contact with R.B.

On October 15, 2011, police were dispatched to the family home due to a "family fight." Based on their observations and interviews, the police were able to determine that Peter had gotten into an argument with his sister-in-law, A.D. During this argument, Peter pushed A.D. and attempted to pull her pants down while threatening to sexually assault her. Peter also grabbed A.D. by the throat. A.D. sustained multiple injuries due to this altercation. When one of Peter's children attempted to intervene, Peter grabbed a knife sharpening tool and raised it like he was going to hit the child with it. The police arrested Peter for domestic violence.

As a result of Peter's arrest, the Department began another investigation. In addition to obtaining information about the October 15 incident, the Department also discovered that Aleza was frequently at the family home, including overnight stays. Based on Peter's arrest and violation of the safety plan, the older children were again removed by the Department.

A few days after the October 15 incident, K.B. contacted the Department indicating that she could no longer care for R.B. Based on continuing violence and alcohol abuse in Peter and Aleza's home, the Department substantiated a reason to believe disposition finding physical abuse and neglectful supervision of R.B. R.B. was removed from K.B. and placed in foster care. On October 18, 2011, the Department filed a petition seeking termination of Peter and Aleza's parental rights to R.B.

3

A.B. was born on February 19, 2012. When the Department became aware of the birth, Aleza was observed to be moving very slowly and she had scratches on her face. When asked about these observations, Aleza offered no explanation. Before A.B. was released from the hospital, the Department was appointed temporary managing conservator of the child. The Department filed a petition seeking termination of Peter and Aleza's parental rights to A.B. on March 1, 2012.

The Department prepared service plans for Peter and Aleza. These service plans were approved and ordered by a court. Under these plans, Peter and Aleza were to complete the following services: (1) domestic violence programs, specifically Battering Intervention and Prevention Program (BIP) for Peter and Women Against Violence Program (WAV) for Aleza; (2) sex abuse education classes; (3) individual therapy; (4) couples counseling; (5) parenting classes; and (6) assessment and recommended treatment by an Outreach, Screening, Assessment, and Referral (OSAR) provider. In addition, Peter and Aleza were to submit to random drug screens, maintain housing, visit with the children, and maintain regular contact with the Department's caseworker.

By the time of trial, Peter had not completed the BIP program and had not been assessed by OSAR. Aleza had not completed the WAV program or the treatment recommended by OSAR by the time of trial. Neither maintained regular contact with the Department caseworker. In addition, both the individual therapist and couples therapist indicated that, due to Peter and Aleza's denials that any problems existed, they made little to no progress through therapy. Peter also only exercised his visitation with R.B. and A.B. four times since A.B.'s removal. Aleza visited with R.B. and A.B. more often

4

but her visitation was not consistent and she would frequently end these visits 15 minutes before the hour-long session was over.

During the pendency of these termination proceedings, police were dispatched to Peter and Aleza's apartment on August 5, 2012. When officers arrived, Aleza had a laceration to her face. An ambulance was called and Aleza was taken to the hospital. However, Aleza left the hospital against medical advice and returned to the apartment. Police were again dispatched to the apartment later that same night. Peter told the officers that Aleza was intoxicated and throwing things at him. Aleza was again taken to the hospital. Both sets of hospital records indicate that Aleza told the medical staff that her facial laceration was caused by Peter hitting her in the face with a glass.

Professional evaluations of R.B. revealed that he possesses a number of significant behavioral problems. R.B. throws fits, can become aggressive, bites himself, shoves other children if they approach him in a nonthreatening manner, and is overly emotional. R.B. also exhibits increased anxiety after visitation with Peter and Aleza.

R.B. and A.B. were placed together with the same foster family. The foster parents are interested in adopting both children. They arrange weekly visitation for R.B. and A.B. with their older siblings. Both children appear to have a normal and healthy attachment to the foster family. The Department seeks termination of Peter and Aleza's parental rights, in part, to allow R.B. and A.B.'s foster parents to adopt them.

The Department's termination case proceeded to trial on February 27, 2013. The Department's live pleading in each case alleged that termination was in the children's best interest and also alleged nearly every statutory predicate act or omission identified

5

by Texas Family Code section 161.001(1). At the conclusion of the trial, the trial court took the case under advisement. Soon thereafter, the trial court entered its final judgment terminating the parental rights of Peter and Aleza as to each child. In both judgments, the trial court found, by clear and convincing evidence, that termination of the parent-child relationship between Peter and Aleza and R.B. and A.B. is in the children's best interest. See TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012).[3] Further, as to both children, the trial court found that Peter and Aleza (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for the parents to obtain the return of the children who have been in the temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parents under Chapter 262 for the abuse or neglect of the children. See § 161.001(1)(D), (O). Thereafter, both Peter and Aleza requested findings of fact and conclusions of law, and moved for new trial. The trial court entered findings of fact and conclusions of law, and expressly denied the motions for new trial. Both Peter and Aleza perfected appeal.

Peter and Aleza present the same three issues by their appeals.[4] They contend that the evidence is legally and factually insufficient to support the trial court's findings

---

[3] Further reference to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

[4] Aleza's brief includes a notation that, "[Aleza's] Brief uses the same material and arguments put forth by [Peter], with permission, as both parties were tried jointly in one proceeding." Review of Aleza's brief confirms that it is substantially the same as Peter's brief.

under Texas Family Code sections 161.001(1)(D), (O), and (2).  Disagreeing with Peter and Aleza's contentions, we will affirm the judgment of the trial court.

## Standards of Review

The natural right existing between parents and their children is of constitutional dimensions.  Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); see Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).  A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit.  Holick, 685 S.W.2d at 20.  That being so, we are required to strictly scrutinize termination proceedings.  In re G.M., 596 S.W.2d 846, 846 (Tex. 1980).  However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights.  In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes (1) one or more of the enumerated acts or omissions, and (2) that termination of the parent-child relationship is in the best interest of the child.  § 161.001.  Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other.  See In re C.H., 89 S.W.3d at 28.  While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001.  In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).  Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports

7

any one of the grounds found in the termination order, provided the record shows also that it was in the best interest of the child for the parent's rights to be terminated. <u>See id</u>.

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. <u>In re J.F.C.</u>, 96 S.W.3d 256, 263 (Tex. 2002); <u>see</u> § 161.206(a) (West 2008). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2008). This standard, which focuses on whether a reasonable finder of fact could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. <u>In re C.H.</u>, 89 S.W.3d at 26. We must maintain appropriate deference to the factfinder's role by assuming that it resolved evidentiary conflicts in favor of its finding when reasonable to do so and by disregarding evidence that it reasonably could have disbelieved. <u>See</u> <u>In re J.F.C.</u>, 96 S.W.3d at 266.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. <u>See id.</u> "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." <u>Id.</u> In

8

addition, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. Id.

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." In re C.H., 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." Id.

Predicate Acts or Omissions

Peter and Aleza's parental rights were terminated after the trial court found that they knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being. See § 161.001(1)(D). Further, the trial court also found that Peter and Aleza had failed to comply with the provisions of a court order that specifically established the actions necessary for them to obtain the return of the children who had been in the temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parents for abuse or neglect. See § 161.001(1)(O). Peter and Aleza challenge the legal and factual sufficiency of the evidence supporting each of these findings.

A predicate ground for termination under section 161.001(1)(D) requires the Department to show "that the child's living conditions pose a real threat of injury or harm." Ybarra v. Tex. Dep't of Human Servs., 869 S.W.2d 574, 577 (Tex.App.—Corpus Christi 1993, no writ). While the focus is on the child's living environment and not the parent's conduct, parental conduct may produce the endangering environment. See In re D.R.J., No. 07-08-00410-CV, 2009 Tex. App. LEXIS 5231, at *7 (Tex.App.—Amarillo July 8, 2009, pet. denied) (mem. op.). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," it is not necessary that the conduct be directed at the child or that the child actually suffers injury. See id. at *8; In re P.E.W., 105 S.W.3d 771, 777 (Tex.App.—Amarillo 2003, no pet.) (the child "need not develop or succumb to a malady" to prove endangering conditions). In addition, courts look to what the parent did both before and after the child's birth in determining whether termination is necessary. In re D.M., 58 S.W.3d 801, 812 (Tex.App.—Fort Worth 2001, no pet.); see In re J.O.A., 283 S.W.3d 336, 345 (Tex. 2009) (endangerment may be established by the parent's actions before the child's birth, while the parent had custody of older children).

Abusive or violent conduct by a parent can produce an environment that endangers the physical or emotional well-being of a child and can, therefore, support a finding under section 161.001(1)(D). D.O. v. Tex. Dep't of Human Servs., 851 S.W.2d 351, 354 (Tex.App.—Austin 1993, no writ) (citing In re B.R., 822 S.W.2d 103, 106 (Tex.App.—Tyler 1991, writ denied)). Inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the conditions or surroundings of the child's

10

home under section 161.001(1)(D).  <u>In re M.R.J.M.</u>, 280 S.W.3d 494, 502 (Tex.App.—Fort Worth 2009, no pet.); <u>see</u> <u>In re W.S.</u>, 899 S.W.2d 772, 776 (Tex.App.—Fort Worth 1995, no writ) ("environment" refers not only to the acceptability of living conditions, but also to a parent's conduct in the home).

The record in this case is replete with instances where Peter or Aleza acted violently.  In addition to the evidence that domestic violence, alcohol use, and physical abuse against the children was alleged against Peter and Aleza in Iowa and the two instances where there were allegations of domestic violence, alcohol use, and physical abuse of the children in Dallas, there have been three instances of domestic violence and alcohol use that have required police involvement in the time that Peter and Aleza have been in Amarillo.  During two of these Amarillo incidents, the children reported physical abuse or threats of physical abuse being directed toward them by Peter and Aleza.  While Peter and Aleza contend that the evidence of these instances of violence was hearsay and both denied that violence or alcohol were involved, significant testimonial evidence was offered that would have enabled the factfinder to have formed a firm belief or conviction that each of these instances involved domestic violence and alcohol abuse and that Peter and Aleza committed acts or made threats of violence toward the children.  Further, Peter and Aleza made statements to others acknowledging the use of alcohol and the presence of violence in the family home.  Beyond these incidents involving police intervention, the children conveyed that the domestic violence between their parents was pretty aggressive and that there were lots of occasions where the children could have been physically injured.

When this evidence is considered in the light most favorable to the finding, the trial court could have formed a firm belief or conviction that there was a pattern of domestic violence, alcohol abuse, and physical violence against the children in the family home.  See In re J.F.C., 96 S.W.3d at 266.  Such a pattern can produce an environment that endangers the physical or emotional well-being of a child that will support a finding under section 161.001(1)(D).  See D.O., 851 S.W.2d at 354.  Consequently, we conclude that the evidence was legally sufficient to support the trial court's finding that Peter and Aleza knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being.

As to the factual sufficiency of the evidence, essentially, Peter and Aleza contend that the evidence of a pattern of violence and, especially, of violence toward the children was predicated on testimonial hearsay.  While this is, for the most part, true, it was for the trial court, as factfinder, to consider the weight to ascribe to this evidence.  See In re J.F.C., 96 S.W.3d at 266.  Further, the factfinder was free to disbelieve Peter and Aleza's denials that there was violence in the family home.  See id.  Peter and Aleza also point to the absence of proof that "any child was injured while in the home" as establishing a lack of evidence that the family home endangered the physical or emotional well-being of the child.  While there was no direct proof that any of the children suffered serious injury as a result of the violence in the home, the Department did not have to establish that the pattern of violence existing in the home was directed at the children or that the children actually suffered injury as a result.  See In re D.R.J., 2009 Tex. App. LEXIS 5231, at *8; In re P.E.W., 105 S.W.3d at 777.  Considering all the

evidence in a neutral light, we conclude that the evidence is sufficient to allow the factfinder to have formed a firm belief or conviction that Peter and Aleza knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being.  See In re J.F.C., 96 S.W.3d at 266.

Concluding that the evidence that Peter and Aleza knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being was supported by legally and factually sufficient evidence, we overrule Peter and Aleza's first issue.  Because we have found the evidence to be sufficient to prove at least one statutory ground for termination, we need not address Peter and Aleza's second issue relating to the sufficiency of the evidence under section 161.001(1)(O).  See In re A.V., 113 S.W.3d at 362; see also TEX. R. APP. P. 47.1.

### Best Interest of the Children

In addition to establishing a predicate ground for termination under section 161.001(1), the Department must also show that termination of Peter and Aleza's parental rights would be in the best interest of R.B. and A.B.  See § 161.001; In re A.V., 113 S.W.3d at 362.  Peter and Aleza challenge the legal and factual sufficiency of the evidence supporting the trial court's finding that termination is in the children's best interest.

The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the question of whether termination of parental rights is in the best interest of the child: (1) the desires of the child, (2) the emotional and physical needs of

13

the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371–72 (Tex. 1976); see § 263.307 (West 2008) (providing extensive list of factors that may be considered in determining child's best interest). In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission. See In re C.H., 89 S.W.3d at 28. The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. In re N.R.T., 338 S.W.3d 667, 677 (Tex.App.—Amarillo 2011, no pet.). The Department need not prove all nine Holley factors, and the absence of evidence relevant to some of those factors does not bar a finding that termination is in the child's best interest, especially in the face of undisputed evidence that the parental relationship endangered the child. See In re C.H., 89 S.W.3d at 27. No one Holley factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. In re A.P., 184 S.W.3d 410, 414 (Tex.App.—Dallas 2006, no pet.).

Both Peter and Aleza essentially contend that the evidence demonstrates that they love their children and are trying to improve their parenting skills. Further, Peter and Aleza contend that the evidence is insufficient to overcome the strong presumption that the best interest of the children would be served by keeping custody of the children

14

with their natural parents.  See In re D.M., 58 S.W.3d at 814.  While there is some evidence to support Peter and Aleza's contentions, the evidence that termination of Peter and Aleza's parental rights to R.B. and A.B. is in the children's best interest is legally and factually sufficient.

As addressed above, evidence was presented that would allow the factfinder to form a firm belief or conviction that the family home was a place of physical violence and alcohol abuse.  This evidence is sufficient to establish that the parental relationship endangers the children, which is especially probative of the children's best interest.  See In re C.H., 89 S.W.3d at 27.  There was also evidence of continuing violence in the family home after the children had been removed and Peter and Aleza had been made aware that such behavior risked the possibility of their reunification with the children.  See In re M.A.P., No. 02-11-00484-CV, 2012 Tex. App. LEXIS 4496, at *55 (Tex.App.—Fort Worth June 7, 2012, no pet.) (mem. op.) (continuation of behavior that led to removal when the parent is aware that such behavior risks reunification is relevant factor in best interest determination).  In addition, there was significant evidence that both Peter and Aleza denied that there was violence in the family home and that either had a problem with alcohol.  Evidence was presented that Peter and Aleza's denials that a problem exists impacts the efficacy of programs available to assist Peter and Aleza to promote the best interest of the children.

Further, there was evidence that Peter rarely visited the children after they were removed by the Department, that Aleza missed a number of visitations and would frequently leave those visits that she did attend early, and that the children did not appear to be bonded to either Peter or Aleza.  By contrast, there was evidence that the

children were doing really well in their foster home, where they have regular visitation with their siblings, and that their foster parents desire to adopt them, which would give R.B. and A.B. stability and permanence. See In re T.D.C., 91 S.W.3d 865, 873 (Tex.App.—Fort Worth 2002, pet. denied) ("[t]he need for permanence is a compelling consideration in determining the child's present and future physical and emotional needs."). The Department indicated that its future plan for the children is adoption by their foster parents.

When all of the evidence is considered, whether in the light most favorable to the judgment or in a neutral light, we conclude that the evidence is such that a reasonable trier of fact could have formed a firm belief or conviction that termination of Peter and Aleza's parental rights was in R.B. and A.B.'s best interest. See In re J.F.C., 96 S.W.3d at 266. Consequently, the evidence was legally and factually sufficient to establish the best interest requirement of section 161.001. See § 161.001(2). We overrule Peter and Aleza's third issue.

## Conclusion

Concluding that the evidence is legally and factually sufficient to establish that Peter and Aleza knowingly placed or knowingly allowed R.B. and A.B. to remain in conditions or surroundings which endangered their physical or emotional well-being and that termination of Peter and Aleza's parental rights would be in R.B. and A.B.'s best interest, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

16